UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 FEB 19 P 1: 18

-------------------------------------------------------X
SARAH BROWN                          :    CIVIL ACTION NO.
               Plaintiff,  :    302CV00316 (CFD).

vs.                                  :
                                 :

TOWN OF GREENWICH, AL CAVA and       :
BERNADETTE WELCH in their
official capacities                  :
               Defendants.  :
-------------------------------------------------------X    February 17, 2004

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine dispute as to any material fact and the defendants are entitled to judgment as a matter of law.

**I.    Applicable Legal Standards: Motion for Summary Judgment**

The requirements for granting summary judgment are well established. There must be "no genuine issue as to any material fact," and a party must be "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The burden is on the moving party "to demonstrate the absence of any material factual issue genuinely in dispute." American International Group, Inc. v. London American International Corp, 664 F.2d 348, 351 (2d Cir. 1981); Heyman v. Commerce & Industry Insurance Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). A material fact is one that might affect the outcome of the suit under the governing substantive

law. Anderson v. Liberty Lobby, Inc., supra, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Factual disputes that are irrelevant or unnecessary will not be counted. Id. In deciding the motion for summary judgment, it is the court's function upon reviewing the pleadings, depositions, answers to interrogatories, affidavits and other evidence on file to determine whether a trial should occur. Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248. Once the moving party makes the requisite showing the burden shifts to the opposing party to prove there is a genuine issue that remains in dispute. Id. at 247-48. The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine issue for trial. Id. at 248.

## II.   Summary of Complaint's factual allegations

The Amended Complaint contains four counts:  Count One purports to assert a claim against the defendant Town of Greenwich ("the Town") under Title VII for alleged hostile work environment.  Count Two purports to raise a claim under Title VII for alleged retaliation against the Town.  Counts Three and Four assert claims under state law, i.e., intentional infliction of emotional distress against defendants Cava and Welch (Count Three) and against the Town (Count Four).  The Amended Complaint alleges the following facts in support of these asserted claims:

The plaintiff, whose race is African-American, has been employed by the Town as a secretary in the Department of Human Resources since September 1983. Amended Complaint, ¶3, all Counts.  There is no allegation that plaintiff was at any time terminated from such employment or demoted in any way.  It is

2

undisputed that the plaintiff continues in such employment to the present time.[1] Rather, the acts complained of consist of the following:

(i) At some unreferenced time, after the receptionist responsible for the production of a departmental newsletter was transferred, the plaintiff was assigned the task of completing the production of the newsletter. ¶5, all Counts. She alleges she was denied training for the software to be used to produce the newsletter although training was authorized for a part-time employee to complete the newsletter. ¶5, all Counts.

(ii) A performance evaluation was conducted by Cava and Welch at some unreferenced time. ¶6, all Counts. During said evaluation, Cava and Welch stated that the plaintiff "could not think outside of the box" and this remark was noted on a written addendum to the written evaluation authored by Cava. ¶6, all Counts.

(iii) Since February 2000, plaintiff has "encountered hostility" based upon her race in that a remark was made by Bernadette Welch in a conversation between Ms. Welch and Barbara Bonino, a colleague of the plaintiff, referring to plaintiff as "having a minority chip on her shoulders." ¶7, all Counts.

(iv) In December 2000, following the filing of complaint affidavits with the relevant state and federal agencies, plaintiff was "wrongfully accused" by Mr. Cava of failing to properly maintain petty cash receipts. ¶8, all Counts. The matter was resolved after plaintiff made efforts to verify the petty cash receipts were properly maintained. Id.

---

[1] See parties Rule 26(f) report, ¶IV, Statement of Undisputed Facts.

### III. Defendants are entitled to Summary Judgment as to Count One, Claim for Hostile Work Environment

There is no genuine dispute that the conduct of which plaintiff complains is neither objectively severe nor pervasive so as to be capable of creating an abusive work environment to a reasonable employee as a matter of law. In addition, two of the three alleged incidents giving rise to the alleged hostile work environment are barred by the applicable statute of limitations.

A working environment overrun by racial antagonism may constitute a Title VII violation under certain circumstances, at least where the environment is so "heavily polluted" with discrimination as to destroy completely the emotional and psychological stability of minority group workers. Snell v. Suffolk County, 782 F.2d 1094, 1102-1103 (2nd Cir. 1986), citing Vaughn v. Pool Offshore Co., 683 F.2d 922, 924 (5th Cir. 1982), quoting Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir 1971), *cert. denied*, 406 U.S 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). To show actionable discrimination based on a hostile work environment theory, plaintiff must show discriminatory harassment occurred with respect to the "terms, conditions or privileges of employment", 42 U.S.C.§2000e-(2)(a)(1), though the resulting loss of tangible job benefits need not be demonstrated. Kotcher v. Rosa and Sullivan Appliance Center, Inc., 957 F.2d 59, 62 (2nd Cir. 1992). A Title VII hostile environment claim will succeed only where the conduct at issue is so severe or pervasive as to create an objectively hostile or abusive work environment and where the victim subjectively perceives the environment to be abusive. Richardson v. New York State Dept. of Corr. Ser., 180 F.3d 426,

4

436 (2nd Cir. 1999) citing Harris v. Forklift Systems, 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).[2] Whether the conduct alleged is severe or pervasive enough to render a work environment abusive objectively may be considered on a motion to dismiss. See Williams v. New York City Housing Authority, 154 Fed.Supp.2d 820 (SDNY 2001).

The non-exclusive list of factors relevant in determining whether a given workplace is permeated with discrimination so severe or pervasive as to support a Title VII claim include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance"; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted. Harris v. Forklift Systems, supra, 510 U.S. 17, 23; Richardson v. New York State Dept. of Corr. Ser., supra, 437; Williams v. New York City Housing Authority, supra, 822. The factors are considered cumulatively so that a realistic view of the work environment is obtained. Richardson v. New York State Dept. of Corr. Ser., supra, 437. Isolated, minor acts or occasional episodes do not warrant relief under Title VII and, while a plaintiff need not present a list of specific acts, she must still prove that the incidents were "sufficiently continuous and concerted" to be considered pervasive or that a single episode is severe enough to establish a hostile working environment. Brennan v. Metropolitan Opera Association, Inc., 192 F.3d 310, 318 (2nd Cir. 1999). "There is no magical formula in this determination, nor is there a specific minimum 'number of incidents below which

---

[2] Generally the same standards apply to both race-based and sex-based hostile environment Title VII claims. Richardson v. New York State Dept. of Corr. Ser., supra, 436 n2.

a plaintiff fails as a matter of law to state a claim'...Generally, however, as the conduct in question becomes more severe, fewer occurrences are necessary to create a hostile work environment.  Thus, while a single racist remark will usually not support a hostile environment claim, a single physical assault would..." Williams v. New York City Housing Authority, supra, 823 (citations omitted).  The totality of the circumstances and the quantity, frequency, and severity of the incidents must be considered.  Richardson v. New York State Dept. of Corr. Ser., supra, 437.

The conduct of which plaintiff complains in this case is not objectively severe nor pervasive so as to be capable of creating an abusive work environment to a reasonable employee as a matter of law.   Even assuming all facts alleged are true there is no objectively abusive working environment as a matter of law:  All that the amended complaint alleges are three isolated incidents which are not severe or pervasive.  There can be but one conclusion on this issue based on the allegations alone given the lack of frequency of the discriminatory conduct, the lack of severity, the absence of physically threatening or humiliating conduct, and the impossibility of any reasonable conclusion, based on the plaintiff's claims, that the alleged conduct unreasonably interfered with plaintiff's work.  In addition, there is no genuine dispute that the factual allegations themselves lack merit and are, in any case, barred by the applicable statute of limitations.

Alleged Denial of Software Training

Plaintiff alleges that, at some unspecified time she was denied certain software training for use in connection with a departmental newsletter when that task fell to her but training was authorized for another part-time employee. Count One, ¶5. There is no claim that any such alleged failure involved racial animus. Nor is there an allegation that the part-time employee who did receive training was white or that the plaintiff's lack of training unreasonably interfered with the plaintiff's work. Thus the allegations concerning the failure to provide software training even assumed to be true facially do not provide a basis for a hostile work environment claim. In any event, there is no genuine dispute that plaintiff, in fact, did receive training for the software in question in 1998. Affidavit of Alfred Cava, **Exhibit A**; Defendants' local 56(a)(1) Statement, (hereinafter "LRCP 56(a)(1) Statement") ¶¶9-10. While the training may not have been to plaintiff's liking, there is no genuine dispute that training for Pagemaker was, in fact, provided. Thus the alleged failure to provide software training cannot be the basis for a hostile work environment claim. Again, even if there were merit to the factual allegation, the failure to provide software training under the circumstances is not, in any case, objectively severe or pervasive as a matter of law.

Even if a colorable claim could be stated, which is denied, such a claim is in any case barred by the applicable statute of limitations. The training was provided to the plaintiff in April of 1998. Affidavit of Alfred Cava, **Exhibit A**; LRCP 56(a)(1) Statement" ¶¶ 9-10. Plaintiff alleges her complaint affidavit was

7

filed with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission on June 26, 2000. Count Two, ¶9. Title VII requires that a charge be filed no later than 300 days after the alleged unlawful employment practice occurs.  42 U.S.C. §2000e-5(c); Mohasco Corp. v. Silver, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).  Assuming the charge was filed as alleged in June 26, 2000, any claim based on an alleged failure to train is untimely and barred.

### The November 1998 Performance Evaluation

No cognizable hostile work environment claim can be premised on the plaintiff's November 1998 performance evaluation.  Any such purported claim is, in any case, time-barred.  Plaintiff alleges in paragraph 6, Counts One, Three and Four:

> 6. Moreover, during a performance evaluation conducted by both Welch and Cava, the directors stated that the plaintiff 'could not think outside of the box.' Said remark was noted on the addendum to the plaintiff's evaluation authored by Al Cava, Director of Human Resources.

There is no allegation that the remark in the evaluation was motivated by racial animus or in any way connected with plaintiff's race.  Nor is the allegation factually accurate: As Mr. Cava's written remark contained in the Annual Employment Evaluation show the remark was not that Ms. Brown "could not" think outside of the box, i.e., that she lacked the ability to do so.  Annual Employment Evaluation (Mr. Cava), **Exhibit B**; LRCP 56(a)(1) Statement ¶ 11.  Rather, Mr. Cava's evaluation contained merely an encouragement, rather commonplace in the business world, not to be reluctant "at times" to "think out of

8

the box" with the presumption, as specifically stated, that the plaintiff had the ability to take this initiative ("Sarah has the ability to continue to grow professionally.") This was entirely appropriate taken in context of the plaintiff's position, her employment history and the dramatic changes in the human resources department and management philosophy. See **Exhibit B**, Annual Employee Evaluation (Mr. Cava) and **Exhibit C**, Annual Employee Evaluation (Ms. Welch "Supervisor's Comments"). Mr. Cava's and Ms. Welch's comments demonstrate that in the past the plaintiff's functions as a departmental secretary were purely clerical; with the promotion to Confidential Secretary in the Management/Confidential class of which department heads are members, Ms. Brown's role was expanding to ultimately function as a resource and *partner* to the department managers. See Supervisor's Comments, **Exhibit C**. The plaintiff had a long work history in Town government which produced a "depth of experience and effectiveness" but which also involved work previously "under an autocratic management style" and departmental philosophy which was now changing: The new Human Resources Department management style and philosophy were encouraging the plaintiff not to rely on those past experiences in decision making and not to be reluctant to think and take charge in new ways, i.e, "think out of the box," precisely because Ms. Brown had that potential to continue to grow. **Exhibit B**.

It is clear that the November 1998 evaluation was not a critical or demeaning one in any regard; on the contrary, on its face, the evaluation was overwhelmingly favorable: Among other things, Mr. Cava wrote: "Overall Sarah

is the consummate professional. Her experience and professional demeanor is an asset to the department." **Exhibit B**. Moreover, the discussion of the 1998 performance evaluation, the plaintiff was told by Al Cava that he had recommended her for a Performance Bonus Award of $1,500.00. Affidavit of Al Cava, **Exhibit A**; LRCP 56(a)(1) Statement, ¶ 13. Following this evaluation and Mr. Cava's nomination of the plaintiff, Ms. Brown in fact received the Outstanding Achievement Incentive in the amount of $1,500.00. See Outstanding Achievement Incentive dated November 30, 1998 and related document attached hereto as **Exhibit D**; LRCP 56(a)(1) Statement, ¶ 14.

In the face of an overwhelmingly favorable evaluation, the challenge not to be afraid to think outside the box as a matter of law cannot be read as anything other than encouraging and positive in the face of Ms. Brown's new role and the new departmental philosophy. It is simply ludicrous to suppose this remark could be any basis for a hostile work environment claim.

To the extent Mr. Cava's remark in the performance evaluation could under any theory be the basis for a Title VII claim, which is vigorously denied, any such claim is in any case barred by the applicable statute of limitations as this evaluation occurred in November 1998. Plaintiff alleges her complaint affidavit was filed with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission on June 26, 2000. Count Two, ¶9. Title VII requires that a charge be filed no later than 300 days after the alleged unlawful employment practice occurs. 42 U.S.C. §2000e-5(c); Mohasco Corp. v. Silver, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532

(1980). Assuming the charge was filed as alleged in June 26, 2000, the plaintiff's claim based on this evaluation is untimely and barred.

### The Barbara Bonino hearsay remark

Plaintiff alleges there was a conversation between Barbara Bonino and the defendant Bernadette Welch where it was allegedly stated that the plaintiff had "a minority chip on her shoulders." There is no allegation that plaintiff herself heard any such remark being made. In April 2000, Ms. Bonino was terminated from her employment by the Town. Affidavit of Al Cava, **Exhibit A**; LRCP 56(a)(1) Statement, ¶ 15. Bonino's supervisor was Bernadette Welch. Id; LRCP 56(a)(1) Statement, ¶ 16. Taken against this background, Bonino clearly had the motivation to bear ill will against Bernadette Welch and the Town of Greenwich.

Even assuming, however, for the purposes of argument that this comment was made, this comment is simply not actionable under Title VII or any other legal theory: An opinion that a person has a minority chip on their shoulders may be insensitive or offensive but such a comment does not constitute a racial epithet and certainly is no racial slur as a matter of law. Even an isolated use of racial slurs resulting from individual attitudes and relationships—which this comment is not---does not amount to a violation of Title VII, Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981). "For racist comments, slurs and jokes to constitute a hostile work environment, there must be more than few isolated incidents of racial enmity, more than sporadic racial slurs, there must be a "steady barrage of opprobrious racial comments." Schwapp v. Town of Avon, supra, 110 (citations omitted). Here there is no steady barrage; at most there is

an allegation of an isolated, offensive, mere hearsay remark uttered, supposedly, in the presence of an employee who was terminated.

The remarks in this case, which are assumed to have been made for the purposes of this motion only, are vastly distinct in frequency, severity and pervasiveness from incidents recognized in other cases as creating a hostile work environment. See, e.g., the "veritable barrage" of racial epithets, including physically threatening remarks, found sufficient to create a question for the jury in Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2nd Cir. 2000); the daily use of offensive racial epithets described in Snell v. Suffolk County, supra, 1098, which, in conjunction with the proliferation of demeaning literature constituted a pervasive and "concerted pattern of harassment." Id. at 1103; Walker v. Ford Motor Co., 684 F.2d 1535, 1359 (11th Cir. 1982) (repeated, continuous and prolonged use of racially abusive terms despite plaintiff's objections created abusive work environment). By contrast, no cognizable claim can be based on the isolated hearsay remark alleged as a matter of law.

<u>Alleged wrongfully accusation of failing to properly maintain petty cash receipts</u>

Plaintiff alleges she was wrongfully accused by Mr. Cava of failing to properly maintain petty cash receipts, ¶8. This did not occur. Affidavit of Al Cava, **Exhibit A**; LRCP 56(a)(1) Statement ¶ 21. In addition, plaintiff failed to raise any such claim in her administrative complaint and is thus barred from raising it now. Even assuming plaintiff could raise such a claim, plaintiff admits the matter was <u>resolved</u> after she verified the records were properly maintained. Amended Complaint, ¶8. There is no question of racial animus; none is alleged.

There is no allegation that discipline was imposed. There is no question discipline has ever been imposed against Ms. Brown. Affidavit of Al Cava, **Exhibit A**; Affidavit of Maureen Kast, **Exhibit E**; LRCP 56(a)(1) Statement ¶ 18. Even assuming that such an a wrongful accusation did occur, it was at most a minor isolated act that was resolved without any question of a tangible adverse employment action. A factual claim such as this simply cannot be the basis for an abusive work environment under Title VII which requires severe or pervasive acts. Given the lack of frequency of the discriminatory conduct as alleged, the lack of severity, the absence of physically threatening or humiliating conduct, and the impossibility of any reasonable conclusion, based on the plaintiff's claims, that the alleged conduct unreasonably interfered with plaintiff's work, defendants are entitled to summary judgment on the Title VII Claims.

### IV.  Count Two Fails to State a Claim for Retaliation

In order to establish a prima facie claim for retaliation, a plaintiff must show that she engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse employment action against her, and that a causal connection exists between the protected activity and the adverse action. Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2nd Cir. 1980); Hanson v. Cytec Industries, 2002 WL 519714 (D.Conn. 2002); Matos v. Bristol Board of Education, 2002 WL1180983 (D.Conn. 2002).

Even assuming, *arguendo*, the truth of the allegations of Count Two, plaintiff has failed to allege a cognizable claim for retaliation upon which relief

could be granted because she has alleged no adverse employment action as a matter of law. An adverse employment action is a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); Hanson v. Cytec Industries, supra. To be "'materially adverse', a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities'.... 'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.'" Galabya, supra, 640, quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993). Plaintiff has suffered no adverse employment action. Plaintiff's employment has not been terminated; she has had no demotion; plaintiff's salary has only increased and has never been decreased; her current title is more distinguished than the title she had previously; plaintiff has had no material loss of benefits; plaintiff's material responsibilities have never diminished. Affidavit of Al Cava, **Exhibit A**. and Affidavit of Maureen Kast, current Director of Human Resources, **Exhibit E**; LRCP 56(a)(1) Statement ¶ ¶18-20.

There is no claim in the Amended Complaint of any retaliatory termination, demotion, decrease in wage or salary, change in title, loss of benefits, or diminished responsibilities in her conditions of employment.

The only conduct post-dating the filing of the compliant affidavit is that asserted in Count Two is the following:

9. In December 2000, the plaintiff was wrongfully accused by Al Cava of failing to properly maintain receipts related to petty cash for the Human Resources Department. Only after the plaintiff's efforts to verify that the records were properly maintained was the matter resolved.

As already stated, such an accusation has never been made. Al Cava Affidavit, **Exhibit A**; LRCP 56(a)(1) Statement ¶ 21. Even assuming such conduct occurred, it might constitute, at best, an inconvenience, it could never constitute a materially adverse change in the conditions of employment as a matter of law. Thus plaintiff has failed to state a claim for retaliation for protected activity in Count Two upon which relief may be granted.

### V.   Count Three and Four Fail to State a Claim Upon Which Relief May be Granted

Counts Three and Four fail to state a claim upon which relief can be granted because the conduct alleged is not extreme and outrageous as a matter of law.

> Liability for intentional infliction of emotional distress exists found only where conduct exceeds all bounds usually tolerated by decent society and is so outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind. See Petyan v. Ellis, 200 Conn. 243, 254 (1986); Reed v. Signode Corp., 652 F. Supp. 129, 137 (D. Conn. 1986). Mere insults, indignities, annoyances, or conduct that displays bad manners or results in hurt feelings, is insufficient. See Kintner v. Nidec-Torin Corp., 662 F. Supp. 112, 114 (D. Conn. 1987); Reed, 652 F. Supp. at 137. The issue of whether a defendant's conduct is extreme and outrageous is a question to be determined by the court in the first instance. Kintner, 662 F. Supp. At 137; Collins v. Gulf Oil Corp., 605 F. Supp. 1519, 1522 (D. Conn. 1985).

Perodeau v. City of Hartford, Civil No. 3:9CV807 (AHN) (D.Conn. 2000) (Copy of decision attached as **Exhibit F**). A complaint is legally insufficient for failure to establish any one of the four elements, including outrageous conduct.[3] Muniz v. Kravis, 59 Conn.App. 704, 708 (2000), citing Reed v. Signode Corp., supra, 137; Petyan v. Ellis, supra, 254.

In the District Court's decision in Perodeau, the plaintiff's allegation that the defendants denied the plaintiff, a single parent, the benefit of a voluntary call-back policy and imposed discipline upon the plaintiff for refusing to take call backs did not meet the threshold requirement of outrageousness. Exhibit A, pp. 13-14.

In Reed v. Signode Corp., supra, it was not outrageous for the employer to deny a plaintiff a leave of absence for treatment of cancer.

In Muniz, the allegation that defendants sent an armed security guard to notify her and her husband (defendant's butler and cook) of their termination from employment and giving them only twenty-four hours to leave their home (a private apartment on the defendants' premises which was used by plaintiff as part of the employment compensation) at a time when plaintiff was on vacation and her husband was recovering from surgery was not "extreme and outrageous" as a matter of law. 59 Conn.App. 704, 709.

If terminating an employee and ejecting an employee from her home on twenty-four hours notice does not constitute outrageous and extreme conduct,

---

[3] The four elements referenced are, specifically: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Muniz v. Kravis, 59 Conn.App. 704, 708 (citations omitted).

16

none of the incidents alleged in this case, taken alone or together, could conceivably constitute conduct so outrageous in character, so extreme in degree, that it was calculated to cause mental distress of a very serious kind. Here there is no question of any discipline or termination ever having been imposed. Affidavit of Maureen Kast, Director of Human Resources, **Exhibit E**; LRCP 56(a)(1) Statement ¶ 18. The alleged comment that someone has "a minority chip on her shoulders," even if assumed to have been made, is not outrageous as a matter of law. The alleged "accusation" of failing to properly maintain petty cash receipts is not outrageous as a matter of law. Therefore the Third and Fourth Counts fail to state a legally sufficient claim which entitles the defendants to summary judgment.

## VI.    Claim for Punitive Damages Must be Dismissed

Title VII precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions. 42 U.S.C. § 1981a(b); Oden v. Oktibbeha County et al., 246 F.3d 458, 465-466 (5th Cir. 2001); Baker v. Runyon, 114 F.3d 668, 669 (7th Cir.1997), cert. denied, 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 277 (1998). Thus plaintiff's claim for punitive damages must also fail.

17

THE DEFENDANTS

By: _____
Valerie E. Maze
Federal Bar No. CT 14080
Law Department,
Town Hall,
101 Field Point Road
Greenwich, CT  06836-2540
Tel:  (203) 622-7876;
Fax: (203) 622-3816