UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
*************************************
SARAH BROWN                          *
            Plaintiff,               *
                                     * CIVIL NO.3:02 CV 00316 (CFD)
VS.                                  *
                                     *
TOWN OF GREENWICH, AL CAVA           *
and BERNADETTE WELCH in their        *
official capacities                  *
            Defendant.               * JUNE 2, 2004
*************************************
```

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO SUMMARY JUDGEMENT**

**I.     STATEMENT OF FACTS**

The plaintiff, Sarah Brown ("Brown") , was employed as a Secretary A for the Town of Greenwich on September 19, 1983. Brown came to the Town of Greenwich ("Town") upon a seventeen (17) year career with the Town of Stamford. (Ex. 1). As a Secretary A, Brown reported directly to the Director of Personnel until his retirement in 1995. (Ex. 1). Among Brown's essential functions were the "transcribing of letters of related memoranda; taking minutes of official meetings; tabulating data and accounting reports; distributing incoming mail and upkeep of clerical and fiscal records." (Ex. 10). In July 1996, Brown was elevated to a Confidential Secretary, a non-union position.. As confidential secretary, Brown reports directly to the Deputy Director of Human Resources, Bernadette Welch, ("Welch") and the Director of Human Resources, Al Cava ("Cava"). Brown's promotion to a confidential secretary was based in large part on her exemplary performance history.

2

Brown continued to perform admirably as evidenced by her November 1998 performance evaluation (Ex. 3). Based upon Brown's sterling performance, Cava recommended Brown for a performance incentive award of which she received a bonus of $1,500.00. (Ex. 12). However, despite Brown's performance and recognition by her peers and supervisors, Brown began to experience a pattern of hostile and disparate treatment.

Specifically, the Human Resources Department published a newsletter from desktop publishing software that required training for the administrative staff. At the time, training was offered to a Barbara DeVita ("DeVita") a white female. (Ex. 1). Brown requested software training. Brown was told that the Town would not fund additional on-site training; any training by Brown would have to be sought by her individually. Brown ultimately received training off-site after work, although the Town paid for the training. Consequently, production of the newsletter fell upon Brown as DeVita left the Town's employ.

Concurrently, Brown and Welch were engaged in a tenuos work relationship. Whereby, Welch would speak to Brown in a terse and rude manner. Consequently, due to a disclosure of a former colleague, Barbara Bonino ("Bonino"), the source of Welch's animus became evident. Bonino was a employee who pursued the position of Pension Manager. In a February 2000 meeting with Welch, Bonino inquired of her chances of receiving the Pension Manager's position. (Ex. 8). While there were several minority candidates vying for the position, Welch claimed that a minority would not be hired. Welch went on to specifically stated that Brown's "minority chip on the shoulder" as a purported basis for limiting the number of minorities in the Town's employ; in direct contravention of the Town's stated Equal Employment Opportunity Policy. (Ex. 2).

3

Bonino reported her statements to Kelly Houston, the Town's Affirmative Action Officer. (Ex. 8). Houston facilitated a mediation between Brown Cava and Welch. (Ex. 7). In furtherance of Houston's initiative, Cava continued to monitor her. Cava continued to monitor any subsequent complaints regarding Welch. Consequently, Brown filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Nonetheless, the continued scrutiny and heightened ridicule of Brown's performance took an emotional toll. Brown requested and received a leave of absence pursuant to the Family Medical Leave Act ("FMLA") for the period November 2000-December 2000. (Ex. 9). However, Brown's much needed respite would prove ineffective as she was confronted with yet another accusation of faulty performance.

Among the many duties of a Confidential Secretary, Brown maintained the petty cash fund as administered by the Town. Any out-of-pocket expenses incurred by Town employees were reimbursed from said fund. Brown would dutifully prepare receipts issued to the Town employee and courtesy copy the Town Comptroller's office. Upon returning from her leave of absence in January 2001, Brown was informed of a shortfall. Again, on her own initiative, Brown contacted the Comptroller's office and presented the receipts. The matter was resolved, thereby, defusing another alleged crisis. All of the aforementioned took place subsequent to Brown's CHRO filing.

Upon exhaustion of all administrative remedies, Brown filed the pending action in February 2002. The operative complaint alleges hostile work environment and retaliation pursuant to 42 U.S.C § 2000e et seq ("Title VII"), as well as common law emotional distress claims as to Welch, Cava and the Town respectively. The defendants now seek a

4

summary disposition through their February 17, 2004 Motion For Summary Judgment.

## II.   ARGUMENT

### A.   Standard of Review

*Rule 56(c) of the Federal Rules of Civil Procedure* provides that a court shall grant a Motion For Summary Judgment if the court determines that "there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law." *Knight v. United States Fire Insurance Company*, 804 F.2d 9, 11(2nd Cir. 1986). In considering a Motion For Summary Judgment, a court should not resolve disputed issues of fact, but assess whether there are any factual issues to be tried, while resolving all ambiguities and drawing all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-250 (1986). Thusly, the role of this court is rather than to decide the issues but, to determine whether there are any genuine issues of material fact to be tried. *Gallo v. Prudential Residential Services Limited Partnership*, 22 F.3d 1219, 1224 (2nd Cir. 1994).

Summary Judgment should not be granted if the dispute about a material fact is "genuine" that is, if the evidence is such that a reasonable jury could return a verdict for a non-moving party. *Id.* To show a genuine dispute, the non-moving party must provide sufficient evidence to allow a jury to return a verdict in her favor. *Anderson* at 248. A material fact is one that would affect the outcome of the action under the governing substantive law. It is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. *Anderson*, 477 U.S. at 248. In other words, summary judgment is only proper where reasonable minds cannot differ as to the meaning

5

of the evidence presented. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2nd Cir. 1991), and where evidence is so one-sided that one party must prevail as a matter of law. *Anderson* 477 U.S. at 251-252.

In discrimination cases such as the instant action, the inquiry is whether or not the plaintiff's race caused the treatment complained of by the plaintiff. Particularly in cases of this type when an evaluation of an individual's motivations and/or state of mind is important, courts sparingly use the tool of summary judgment as juries generally have a unique advantage over judges in making these type of assessments. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61 (2d. Cir. 1998); *Gallagher v. Delaney*, 139 F.3d 338, 342 (2nd Cir. 1998) (noting jury's possession of the "current real life experiences required in interpreting subtle perceptions and implicit communications").

**B.    Brown's Hostile Work Environment Claim Pursuant To Title VII**

To present and preserve a viable hostile work environment claim, Brown must prove the following: (1) the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment; (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2nd Cir. 1997). "A hostile working environment is shown when the incidents of harassments occur either in concert or with a regularity that can reasonably be turned pervasive". *Whidbee v. Ghardelli Foods Specialties Inc.*, 223 F.3d 62, 69 (2nd Cir. 2000).

6

Lastly, a plaintiff must prove that any allegedly hostile acts were directed toward her because of her race. *Richardson v. New York State Department of Correctional Services,* 180 F. 3d 426, 440 (2nd Cir. 1999). Furthermore, the prima facie case regarding hostile work environment claims may be established upon consideration of "the totality of circumstances". Schwapp at 118 F.3d at 111. There are several factual predicates for Brown's hostile work environment claim. Brown asserts that during 1998 she was denied training regarding usage of soft desktop publishing software in connection with preparation of the Town's newsletter. At the time, the responsibility for producing the newsletter was that of Brown's similarly situated white counterpart DeVita. (Ex. 1). When she left the Town's employ, Brown was entrusted with producing the newsletter without the required software training.

While the Town indicates that Brown subsequently received the training in order to produce the newsletter, it was only after Brown's initiative and the Town's refusal to have the onsite trainer return to the municipal offices to train Brown. Ultimately, Brown received training at a local community college.

Furthermore, in November 1998, in an otherwise favorable performance evaluation, Cava, noted that Brown should make additional efforts to "think outside of the box". (Ex. 5). Notably, Cava's seemingly inocous comment came on the heals of the aforementioned failure to train Brown regarding desktop publishing software. Moreover, Brown's rebuttal and Welch's comments all noted the necessity for Brown's training. (Exs. 4, 5, 6).

The defendants attempt to explain away the discriminatory impact of the above-referenced event, by indicating that they are not timely as the software training issue and the

7

November 1998 evaluation are beyond the 300 day time limitation imposed by Title VII. However, Brown maintains that said allegations maybe considered pursuant to the continuing violation theory.

Under the continuing violation doctrine two criteria must be met. First, at least one incidence of discrimination must have occurred within the filing period, and second, earlier acts cannot be discreet and unrelated, but rather must be part of a continuing policy or practice that includes a discriminatory act within time. *Cruz v. Coach Stores Inc.*, 202 F.3d 560 (2nd Cir. 2000). Moreover, as the Supreme Court recently found, "claims of a hostile work environment involves repeated conduct which cannot be said to occur on any particular day. As such, a charge alleging a hostile work environment could not be time barred if all the acts constituting the claim are part of the same unlawful practice and at least one of those acts falls within the filing period. *National R.R. Passenger Corp. v. Morgan*, 122, S.Ct 2061 (2002). The pending action was filed in February 2002.

The Town also claims that Brown's accusations of retaliation as it relates to the dispute over maintaining the petty cash fund receipts were not raised at the CHRO level. As such, the Town maintains in consideration of that specific allegation is barred due to a failure to exhaust. However, the nature of the charge before the administrative agency affects the scope of the courts jurisdiction. The court may only exercise jurisdiction over claims encompassed within the charge as presented before CHRO and alike or related matters that might reasonably be expected to be the subject of a CHRO investigation growing out of the charge. See *Accord Drummer v. DCI Contracting Corp.*, 772 F. Supp. 821, 827 (S.D.N.Y. 1991); *Howard v. Holmes*, 656 F. Supp. 1144, 1146 n4 (S.D.N.Y.

8

1987). While Brown's CHRO complaint did not cite retaliation as a basis, a claim is adequately exhausted when "though not before the CHRO with particularity, they nonetheless are reasonably related to the charge conduct by virtue of falling within the scope of the EEOC investigation which can reasonably be expected to go out of the charge of discrimination. *Butts v. City of New York Department of Housing Preservation and Development*, 990 F. 2d 1397, 1402 (2nd Cir. 1993); *Francis v. City of New York*, 235 F. 3d 763, 766 (2nd Cir. 2000).

*Butts* recognized three circumstances in which a claim not expressly raised before an administrative agency is reasonably related; (1)a policy of liberally interpreted pleading requirements; (2) to preserve retaliation claims arising from an employee filing an EEOC complaint; (3) when further incidents of discrimination are carried out and precisely the same manner as alleged in the EEOC complaint. *Id.* at 1402; *Amendral v. NYS Office of Mental Health,* 743 F. 2d 963, 967 (2nd Cir. 1984). Consideration of Brown's allegations regarding the petty cash receipts are appropriate on two grounds. Brown has asserted a retaliation claim, See § C*, Infra.* Moreover, the issue of the petty cash receipts arose in the same manner as the precise conduct presented to CHRO; namely prolonged and repeated scrutiny of Brown's work performance. As Brown has asserted retaliation claim consistent with the stated policy considerations articulated in *Butts* the allegations regarding the petty cash receipts are properly before this court and present a genuine issue of material fact. Moreover, the Town frames Welch's clearly probative and relevant comments to Bonino as hearsay. To the contrary, Bonino's statement may be considered for "non-hearsay purposes of proving the statement was made or that other facts can be inferred from the

9

making of the statement." See Fed.R. Evid. 801 (c); *Martirelli v. Bridgeport Roman Catholic Diocese*, 196 F. 3d 409, 431 (2d Cir. 1999). Additionally, Bonino's statement concerning Welch is certainly relevant and probative of discriminatory intent.

Accordingly, Brown maintains that genuine issues of material fact remain as to her hostile work environment claim, thus, summary judgment must be denied.

### C. Brown's Retaliation Claim Pursuant To Title VII

Title VII also prohibits discriminatory conduct for engaging in protected activity. Protected activity is defined as an action taken to protest or oppose statutorily prohibited discrimination. *Cruz v. Coach Stores Inc*., 202 F.3d 560 (2nd Cir. 2000). Thus, a prima facie case of retaliation requires (1) participation in a protected activity that is known to the defendant; (2) an employment decision or action disadvantaging the plaintiff and; (3) a causal connection between the protected activity and the adverse decision. *Richardson,* 180 F.3d at 443.

Brown engaged in protected activity by filing her complaint-affidavit with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Said complaint was filed on February 1, 2000. Brown's CHRO complaint addressed the allegations of discriminatory conduct in the workplace. Since the filing of her complaint, Brown endured the following scrutiny. While on excused medical leave of absence, an issue was raised as to whether accurate accounting records were maintained for purposes of the Town's petty cash receipts. Mainly, the accusation that records regarding the Town's petty cash fund were improperly kept. The records reflect that Brown, prior to her medical leave, forwarded the receipts evidencing reimbursements to the Town's Comptroller office.

10

Nonetheless, upon Brown's return from her medical leave of absence, Cava confronted her over what the record reveals as a non-issue.[1]

The petty cash issue is further evidence of excessive monitoring as a form of retaliation. At least one circuit court has recognized that close scrutiny and/or surveillance of employees constitutes sufficient grounds for finding an adverse action to sustain a retaliation claim. *Harrison v. Metro Government of Nashville*, 80 F. 3d 1107, 1119 (6th Cir. 1996). The probative value of such forms of retaliation has been summarized as follows: "its presence strongly suggests that the possibility of a search for a pretextual basis for discipline was for the purpose of retaliation." B.E. Schlei & P. Grossman, *Employment Discrimination Law*, 2nd Edition 1983.

### D. Brown's Emotional Distress Claims

The balance of Brown's complaint asserts emotional distress claims sounding in intentional infliction of emotional distress and negligent infliction of emotional distress. Brown's intentional infliction of emotional distress as to Cava and Welch respectively must establish the following: (1) the actor intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of the conduct; (2) that the conduct was extreme and outrageous; (3) that the defendants conduct was the cause of the plaintiff's distress and (4) the emotional distress sustained by the plaintiff was severe. For conduct to be deemed as extreme and outrageous it must exceed all bounds usually tolerated by a decent society. *Muniz v. Kravitz*, 59 Conn. App. 704, 708 (2000).

---

[1] To the extent the Town relies on a failure to exhaust argument, Brown relies on her argument in Section B, *Supra* pursuant to *Butts*.

11

Brown's negligent infliction of emotional distress claim as to the Town itself must establish the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness of bodily harm. *Montinieri v. Southern New England Telephone Company*, 175 Conn. 337, 345 (1978). The crux of Brown's claim concerning negligent infliction of emotional distress turns on whether the defendant's conduct was "sufficiently wrongful" so that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress. *Morris v. Hartford Courant Company*, 200 Conn. 676 (1986). In consideration of Brown's intentional infliction of emotional distress claim as to Welch and Cava respectively, consideration of the hierarchy between the parties is paramount. The instant action presents a municipal employee without union protection who reports directly to the Deputy Director and Director of Human Resources respectively. Both Welch and Cava evaluate Brown's performance. Their perception of Brown dictate the scope of her duties, level of pay and ultimately her livelihood. In sum, reviewing courts have recognized the relationship between parties and their relative authority when contemplating an intentional infliction of emotional distress claim. "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interest." *Mellaly v. Eastman Kodak*, 42 Conn. Supp. 17, 21 (1991) quoting "Restatement of Torts (Second) § 46 Comment E.

12

While the defendant attempts to frame Welch's comments as harmless, there are probative of her intent and general attitude towards minorities in the workplace.  To the extent, Welch's comments are indicative of discrimination not only as to Brown but also other minorities in the workplace a genuine issue of material fact remains as to whether Welch's conduct "exceeds all bounds of decency", particularly in light of her stated Equal Employment Opportunity Policy.  (Ex. 2).

**CONCLUSION**

WHEREFORE, based on the foregoing, the plaintiff, Sarah Brown, respectfully requests that Summary Judgment be denied.


PLAINTIFF, SARAH BROWN



BY:_____
        Marc L. Glenn
        Law Office of
        W. Martyn Philpot, Jr., L.L.C.
        409 Orange Street
        New Haven, CT  06511-6406
        Tel. No. (203) 624-4666
        Federal Bar No. 21369
        Her Attorneys

13

## **CERTIFICATION**

      ***THIS IS TO CERTIFY*** that a copy of the foregoing was mailed, postage prepaid, this date, to all counsel of record as follows:

Valerie E. Maze  
Assistant Town Attorney  
Town of Greenwich  
Law Department  
101 Field Point Road  
P. O. Box 2540  
Greenwich, CT 06836-2540

                                                                           _____  
                                                                             Marc L. Glenn

s:\docs\employ\brown.s.memo.law.6-1-04